UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7810**
**MDD_CDAChambers@mdd.uscourts.gov**

March 26, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:  *Estelle G. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
     Civil No. 24-0012-CDA

Dear Counsel:

On January 3, 2024, Plaintiff Estelle G. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny their claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6) and the parties' filings (ECFs 10, 12, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the Court will AFFIRM the SSA's decision. This letter explains why.

I.     **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on December 16, 2015, alleging a disability onset date of July 31, 2014. Tr. 216-17. Plaintiff's claims were denied initially and on reconsideration. Tr. 122-28. On January 25, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 35-97. Following the hearing, on June 27, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 9-29. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 1-5, but on September 22, 2020, the Court remanded Plaintiff's case to the Commissioner for further administrative proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g), Tr. 860-67. On January 12, 2021, the AC vacated the SSA's decision and remanded Plaintiff's case to an ALJ for a new hearing. Tr. 868-71. On June 3, 2021, an ALJ held a new hearing. Tr. 803-51. Following the hearing, on December 15, 2021, the ALJ again

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security, on January 3, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Estelle G. v. Dudek*
Civil No. 24-0012-CDA
March 26, 2025
Page 2

determined that Plaintiff was not disabled. Tr. 771-800. The AC denied Plaintiff's request for review, but on December 15, 2022, the Court again remanded Plaintiff's case to the Commissioner for further administrative proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g). Tr. 1255-59. On January 12, 2023, the AC vacated the SSA's decision and remanded Plaintiff's case to an ALJ for a new hearing. Tr. 1260-63. On August 3, 2023, an ALJ held a new hearing. Tr. 1200-24. On September 20, 2023, the ALJ, for a third time, determined that Plaintiff was not disabled. Tr. 1286-1312. Because the AC did not assume jurisdiction over Plaintiff's case, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a); 20 C.F.R. § 416.1484(d); 20 C.F.R. § 404.984(d).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engage[d] in substantial gainful activity . . . from . . . July 31, 2014 through . . . December 31, 2018[.]" Tr. 1292. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "migraine headaches, depressive disorder, anxiety disorder, and post-traumatic stress [PTSD] disorder." Tr. 1292. The ALJ also determined that all of Plaintiff's other impairments were considered non-severe impairments. Tr. 1292-93. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 1293. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform work where she never climbs ladders, ropes, or scaffolds. [Plaintiff] can perform work where she never has to balance on uneven, narrow, or slippery surfaces. [Plaintiff] can perform work where she has no exposure to hazards, such as moving machinery and unprotected heights. [Plaintiff] can perform simple, routine, and repetitive tasks in an environment where [Plaintiff] is not expected to perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas. [Plaintiff] can perform work where there are few, if any, workplace chances.

> [Plaintiff] can perform work where she has only occasional interaction with the public, coworkers, and supervisors.

Tr. 1297.  The ALJ determined that Plaintiff had no past relevant work but could perform other jobs that existed in significant numbers in the national economy.  Tr. 1303-04.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 1304.

### III.  LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff first argues that the RFC is not supported by substantial evidence because the ALJ failed to provide a narrative discussion about why the specific production rate limitation in the RFC accounts for Plaintiff's severe impairments.  ECF 10, at 8-15.  Defendant counters that the RFC is supported by substantial evidence because "the ALJ provided direct reasoning for his conclusion that" the specific production rate limitation "accounted for Plaintiff's moderate limitations in concentration, persistence, or [] pace [("CPP")]."  ECF 12, at 9-12, 14.  Plaintiff then argues that the RFC is not supported by substantial evidence because the ALJ erroneously declined to consider Plaintiff's inflammatory arthritis at step two of the sequential evaluation process.  ECF 10, at 15-18.  Defendant asserts that the ALJ did not err when they declined to consider Plaintiff's inflammatory arthritis because the evidence that Plaintiff relies on to establish such impairment was subjective, or generated post-date last insured ("DLI"), and does not link back to Plaintiff's pre-DLI condition.  ECF 12, at 15-19.  I will address each of Plaintiff's arguments in turn.

   A. *The specific production rate limitation in the RFC is supported by substantial evidence.*

The Court disagrees with Plaintiff that the ALJ failed to provide a narrative discussion about why the specific production rate limitation in the RFC accounts for Plaintiff's severe impairments.  *See generally* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence

supports each conclusion[.]"); *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) ("[E]very conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing [] the evidence that supports it." (citation omitted)); *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("[T]he ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to [their] conclusion." (citation omitted)). To be sure, the ALJ addressed the specific production rate limitation three times in their decision. First, the ALJ concluded that "[b]ased on the evidence as a whole, [Plaintiff] can perform the full range of work as specified in the [RFC]." Tr. 1302. Second, the ALJ concluded that the RFC "is supported by the evidence of record considered in its entirety." Tr. 1303. Third, the ALJ concluded that:

> consistent with the Federal Appeal Court's ruling in *Mascio v. Colvin*, 780 F. 3d 632 (4th Cir. 2015), with regard to a finding of moderate limitation in [CPP], the undersigned is required to assess the extent to which to this moderate finding impacts on [Plaintiff]'s ability to stay on tasks at an adequate pace for an 8-hour workday, recognizing that a restriction to carrying out simple and routine tasks that are not performed at production rate pace does not on its face address all of those areas. For any possible persistence or concentration concerns not addressed fully by this restriction, regarding which there is little support for on this record, given [Plaintiff]'s usually intact attention and concentration findings on mental status examination, and her activities of daily living that have included school, some work, caring for others and herself, and caring for her home, the undersigned nonetheless notes that employees are generally entitled to breaks ever every two hours of work. It is further noted that, while breaks are typically allowed to employees, some employees do not take them, and others who take them do not necessarily need them to be able to focus, refocus and stay on task. Should [Plaintiff] need breaks for any possible persistence or concentration concerns, they are available as a matter of course, and do not need to be addressed in the [RFC]. Therefore, the restriction provided in the [RFC] assessed adequately accounts for [Plaintiff]'s moderate restriction in [CPP].

Tr. 1302-03. Although all three references imply that the ALJ intended that the specific production rate limitation adequately accounted for Plaintiff's moderate CPP limitation, the Court agrees with Plaintiff that the ALJ failed to explicitly identify what evidence they relied on to reach this conclusion. Even so, a careful review of the ALJ's decision shows that the ALJ still provided substantial evidence for the specific production rate limitation in the RFC.

Courts in this District have previously recognized that similar production rate limitations in an RFC adequately account for a claimant's moderate CPP limitation. *See, e.g., Michelle W. v. O'Malley*, No. 23-2898-CDA, 2024 WL 392065, at *2-4 (D. Md. Aug. 23, 2024) (holding that an RFC restricting the claimant to "simple, routine, and repetitive tasks in an environment where [they are] not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas[,]" adequately accounted for the claimant's moderate CPP limitation); *Timothy H. v. Kijakazi*, No. 22-2841-BAH, 2023 WL 6809802, at *2-

3 (D. Md. Oct. 16, 2023) (holding that an RFC restricting the claimant to "no work involving fast-paced production standards such as assembly line work or hourly quotas" adequately accounted for the claimant's moderate CPP limitation). Where an ALJ fails to explicitly identify what evidence they relied on to conclude that a production rate limitation accounts for a moderate CPP limitation, courts in this District have found that other evidence in the ALJ's decision may still provide substantial evidence for the ALJ's inclusion of a production rate limitation in their RFC. *See Michelle W.*, 2024 WL 392065, at *4 (finding substantial evidence to support a production rate limitation where the ALJ considered medical evidence, medical opinions, and subjective complaints concerning the claimant's moderate CPP limitation); *Timothy H.*, 2023 WL 6809802, at *3 (finding substantial evidence to support a production rate limitation where the ALJ considered medical evidence and medical opinions concerning the claimant's moderate CPP limitation); *April T. v. Kijakazi*, No. 22-2820, 2023 WL 5721719, at *4 (D. Md. Sept. 5, 2023) (finding substantial evidence to support a production rate limitation where the ALJ included such limitation "in the same sentence in which they limited [the p]laintiff from performing "simple, routine, and repetitive work—a provision which is undisputedly intended to refer to [the p]laintiff's moderate CPP difficulties"); *Orlando M. v. Kijakazi*, No. 22-1585-BAH, 2023 WL 2561221, at *3-4 (D. Md. Mar. 17, 2023) (finding substantial evidence to support a production rate limitation where the ALJ considered medical opinions concerning the claimant's moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (same). Moreover, "where an ALJ 'finds moderate limitation in CPP' and 'has included a . . . restriction to non-production oriented work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.'" *Michelle W.*, 2024 WL 392065, at *3 (quoting *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016)).

Here, the ALJ concluded that Plaintiff had a moderate CPP limitation. Tr. 1295. All three references to the specific production rate limitation imply that the ALJ intended that such limitation adequately accounted for Plaintiff's moderate CPP limitation. In fact, the ALJ stated—in no uncertain terms—that the specific production rate limitation adequately accounted for Plaintiff's moderate CPP limitation. Tr. 1302-03. Moreover, like in *Michelle W.*, *Timothy H.*, *April T.*, *Orlando M.*, and *Kenneth L.*, the ALJ considered other evidence of Plaintiff's moderate CPP limitation in the RFC assessment. The ALJ considered Plaintiff's testimony that "she can no longer work due to a combination of her physical and mental conditions[,]" including an "inability to concentrate, trouble communicating at times, and . . . [a] history of PTSD, depression, and anxiety." Tr. 1298-99. The ALJ also noted several occasions where Plaintiff's treating sources observed that Plaintiff's memory, attention, and concentration were fine. Tr. 1299-1300. Ultimately, the ALJ concluded that the record supported a moderate CPP limitation given Plaintiff's "school performance, . . . care for [themselves] and [their] husband, . . . work[,] . . . significant, but conservative care, mental health medications, and some abnormal mental health findings." Tr. 1301. Given this analysis, the ALJ's decision provides a "logical bridge" connecting evidence of Plaintiff's moderate CPP limitation to the specific production rate limitation in the RFC. *Woods*, 888 F.3d at 694. Even so, "'*Mascio* does not require further explanation by the ALJ'" because Plaintiff failed to argue that they cannot perform "'even non-

*Estelle G. v. Dudek*
Civil No. 24-0012-CDA
March 26, 2025
Page 6

production-type work because of [their] CPP deficits.'" *Michelle W.*, 2024 WL 392065, at *3 (quoting *Grant*, 2016 WL 4007606, at *9).

Additionally, Plaintiff fails to identify any RFC provision that the ALJ should have included in lieu of the specific production rate limitation at issue in this case. *See Michelle W.*, 2024 WL 392065, at *4; *Timothy H.*, 2023 WL 6809802, at *3; *April T.*, 2023 WL 5721719, at *4. Further, Plaintiff fails to explain how a more detailed explanation of the ALJ's decision to include the specific production rate limitation might change the outcome of this case. *See Michelle W.*, 2024 WL 392065, at *4; *Timothy H.*, 2023 WL 6809802, at *3; *April T.*, 2023 WL 5721719, at *4; *Orlando M.*, 2023 WL 2561221, at *4. Rather, Plaintiff argues, in essence, that the ALJ's lack of explanation precludes judicial review. *See Michelle W.*, 2024 WL 392065, at *4; *Timothy H.*, 2023 WL 6809802, at *3; *Orlando M.*, 2023 WL 2561221, at *4. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

This case is distinguishable from the cases that Plaintiff relies on. In all four cases, the ALJ failed to explicitly say, in the RFC assessment, that the claimant's CPP limitation is adequately accounted for by the production rate limitation. *See Reva H. v. O'Malley*, No. 23-852-CDA, 2024 WL 1194451, at *3 (D. Md. Mar. 20, 2024); Letter Order at 4, *Pamela P. v. Kijakazi*, No. 22-0354-JMC (D. Md. Nov. 29, 2022), ECF No. 15; Memorandum Opinion at 9, *Stacey C. v. Kijakazi*, No. CBD-20-2833 (D. Md. Mar. 17, 2022), ECF No. 18; *Rena B. v. Kijakazi*, No. BPG-20-3709, 2022 WL 1714851, at *2 (D. Md. Jan. 20, 2022). As a result, the courts in those cases were left to guess whether the ALJ intended for the production rate limitation to adequately account for Plaintiff's moderate CPP limitation. In contrast, the ALJ here explicitly stated that the specific production rate limitation adequately accounted for Plaintiff's moderate CPP limitation. Tr. 1302-03. Therefore, unlike in those cases Plaintiff presents, the Court is not left to guess in this one whether the ALJ intended for the production rate limitation to adequately account for another one of Plaintiff's impairments. This distinction is important for the Court to properly conclude that the ALJ's decision "build[s] an accurate and logical bridge" from evidence of Plaintiff's moderate CPP limitation to the specific production rate limitation in the RFC. *Woods*, 888 F.3d at 694.

> B. *The ALJ did not err when they declined to consider Plaintiff's inflammatory arthritis at step two of the sequential evaluation process.*

The Court also disagrees with Plaintiff that the ALJ erroneously declined to consider Plaintiff's inflammatory arthritis at step two of the sequential evaluation process. "To establish eligibility for Social Security disability benefits, a claimant must show that [they] became disabled before [their] DLI." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). When assessing a claimant's symptoms under step two, "ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The first step is for the ALJ to "determine whether objective medical evidence presents a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms." *Id.*; *see also Craig*, 76 F.3d at 592 ("[T]here must be objective medical evidence establishing some

*Estelle G. v. Dudek*
Civil No. 24-0012-CDA
March 26, 2025
Page 7

condition that could reasonably be expected to produce the pain alleged."). A medically determinable impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Here, the ALJ concluded, at step one of the two-step framework, that inflammatory arthritis was not a medically determinable impairment. *See* Tr. 1292-93. The ALJ summarized its findings that the other possible impairments were:

> (1) symptoms, not impairments; (2) encompassed by or redundant of the severe impairments already identified; (3) lack[ing] sufficient evidence to meet the durational requirement to be classified as severe impairments; (4) lack[ing] sufficient evidence of clinical signs or laboratory findings to be found medically-determinable; (5) a slight abnormality or a combination of slight abnormalities that would have no more than minimal effect on [Plaintiff]'s ability to meet basic demands of work activity (*i.e.* are non-severe impairments); or, (6) a combination of multiple of these categories. Thus, any such indication is found to be not a severe impairment for the reasons described above.

Tr. 1293. Plaintiff argues that this finding constitutes error because "[t]he record [] confirms that Plaintiff suffers from inflammatory arthritis, as demonstrated by [their] history of polyarthralgia[] prior to [their DLI] and by medically acceptable diagnostic techniques performed less than three weeks after [their DLI]." ECF 10, at 16-17. Plaintiff identifies both pre- and post-DLI evidence that they believe establish inflammatory arthritis as a medically determinable impairment.[3] *See id.* For the following reasons, the Court finds that the RFC is supported by substantial evidence because the ALJ did not err when they declined to consider Plaintiff's inflammatory arthritis at step two.

First, Plaintiff relies on pre-DLI evidence that is subjective. Plaintiff cites to a function report and a mental impairment questionnaire, which each contain complaints from Plaintiff about their impairments. Tr. 263, 338. Neither document relies on "medically acceptable clinical and laboratory diagnostic techniques" to find that inflammatory arthritis results from Plaintiff's complaints. 42 U.S.C. § 423(d)(3). Because the pre-DLI evidence is not objective evidence, the ALJ did not err when they concluded that inflammatory arthritis was not a medically determinable impairment. Second, Plaintiff relies on post-DLI evidence that does not link back to Plaintiff's pre-DLI condition.[4] *See Bird*, 699 F.3d at 341 ("[P]ost-DLI medical evidence generally is admissible in an SSA disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre–DLI condition."). In determining whether an inference of linkage exists, courts consider, among other factors,

---

[3] Plaintiff's DLI is December 31, 2018. Tr. 1290.

[4] Despite acknowledging that the record contained post-DLI evidence, the ALJ declined to consider the post-DLI evidence because Plaintiff "must establish disability on or before th[e DLI] in order to be entitled to a period of disability and disability insurance benefits." Tr. 1300.

*Estelle G. v. Dudek*
Civil No. 24-0012-CDA
March 26, 2025
Page 8

whether the post-DLI evidence provides information about a claimant's pre-DLI condition,[5] or reflects an earlier and progressive degeneration.[6]  Plaintiff cites to physician notes taken during Plaintiff's several visits to the Division of Rheumatology at Johns Hopkins from October 2020 to December 2022.  Tr. 1145, 1149, 1456-57, 1459, 1461.  However, unlike in *Parker*, *Crussiah*, and *Moore*, none of the physician notes provide information about Plaintiff's pre-DLI condition or reflect an earlier and progressive degeneration resulting in inflammatory arthritis.  Instead, they say that Plaintiff's "current clinical picture demonstrates inflammatory arthritis[,]" Tr. 1145, 1456, 1461, Plaintiff's chief complaint, upon visiting, was inflammatory arthritis, Tr. 1149, Plaintiff was "[f]irst evaluated in April 2019 for polyarthralgia[,]" Tr. 1457, and Plaintiff underwent laboratory testing and showed positive rheumatoid factor and nuclear antibody on January 18, 2019, Tr. 1459.  Because the post-DLI evidence does not permit an inference of linkage with Plaintiff's pre-DLI condition, the ALJ did not err when they declined to consider the post-DLI evidence.  *See David H. v. Saul*, No. 20-0003, 2021 WL 1232674, at *10 (W.D. Va. Apr. 1, 2021) (citing *Parker*, 733 F. App'x at 687-88) ("An ALJ need not consider post-DLI evidence if [they] properly conclude[] that no linkage exists.").

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is AFFIRMED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

[5] *See Parker v. Berryhill*, 733 F. App'x 684, 687 (4th Cir. 2018) (finding that the post-DLI evidence did not link back to the plaintiff's pre-DLI condition because the post-DLI evidence "provided no information at all on the history of [the plaintiff]'s condition"); *Crussiah v. Colvin*, No. TMD-12-2307, 2014 WL 3778615, at *11 (D. Md. July 29, 2014) (finding that the post-DLI evidence did not link back to the plaintiff's pre-DLI condition because the post-DLI evidence "did not summarize [the p]laintiff's symptoms, impairments, and their impact with regard to the period antedating [their] DLI").

[6] *Brown v. Kijakazi*, No. 20-1035, 2022 WL 2222683, at *7 (M.D.N.C. June 21, 2022) (quoting *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)).